IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VEMEX TRADING CORP., | § § | |
| Plaintiff, | § § § | |
| versus | § § | CIVIL ACTION NO. H-08-3791 |
| TECHNOLOGY VENTURES, INC., | § § § | |
| Defendant. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

From May 16, 2011 through May 19, 2011, a bench trial was held in the above-styled case. After reviewing the evidence presented, the Court enters the following findings of fact and conclusions of law.

### I.    SUMMARY OF DISPUTE

Plaintiff Vemex Trading Corporation ("Vemex" or "Plaintiff") is a company that entered into a contract to purchase oil and gas equipment from Defendant Technology Ventures, Inc. ("TVI" or "Defendant"), a company that manufactures and sells oil and gas equipment. Under the contract, Defendant was required to pack and ship the equipment to Russia, and to supervise its installation at the end-user's site in Russia.

Plaintiff argues that Defendant breached the contract by delivering defective equipment and failing to cure its nonconformities while the equipment was being installed. However, Defendant argues that it fulfilled its obligations under the contract. Defendant also asserts multiple affirmative defenses. Defendant argues that Plaintiff's breach of contract claim is barred by the statute of limitations, by laches, and by estoppel. Defendant also argues that it was not required to make any

repairs or replacements to the equipment due to the expiration or exclusion of the warranty in the contract. In addition, Defendant argues that Plaintiff modified the contract, materially breached the contract, and provided no notice and no opportunity to cure. Defendant furthermore argues that if any breach is shown, the actions of third parties made performance impossible and that Plaintiff's damages are limited under the express terms of the contract. Finally, Defendant argues that Plaintiff failed to mitigate damages and that any damage was due to Plaintiff's contributory negligence or intervening causes.

### A. FACTUAL BACKGROUND

Plaintiff and Defendant entered into Contract No. 11351 (the "Contract") on March 18, 2004. Under the Contract, Plaintiff purchased a new coiled tubing unit, crane and spare parts (collectively, "the Equipment"). The Contract specified that the Equipment was to be prepared for use in arctic conditions. It also stated that Defendant was responsible for the quality of the Equipment that was delivered.

The Contract specified that Defendant would pack and ship the Equipment to Russia, and that Defendant would then supervise the installation of the Equipment at the end-user's site in Russia. However, the Contract did not contain any provisions requiring Plaintiff to be the end-user of the Equipment or prohibiting Plaintiff from selling the Equipment to another party.

Under the Contract, Plaintiff had the right to inspect the Equipment at any time during the manufacturing process. The Contract also referred to a "qualified independent inspector's evaluation" to occur prior to shipment, in section 3.1(a)(v). Section 3.1(a)(v) did not specify the party responsible for arranging the inspector's evaluation. However, it also stated that "if inspection

is not performed… the seller reserves the right to ship/release the goods to freight forwarder at this time."

The Contract did not identify a specific date by which Defendant was required to deliver the Equipment. Section 4.1 stated that delivery was to occur "within 14 weeks from the advance payment according to point 3.1a." However, section 3.1a listed three distinct payments occurring in advance of shipment. The first payment was for $120,000 "within 5 business days from the signing of the Contract against presentation to Buyer" of certain documents. The second payment was for $120,000 "within 45 business days from the date of the first advance payment against presentation to Buyer" of the same documents required for the first advance payment. The third payment was for $324,200 "upon receipt by Buyer from Seller [of] the notification of readiness of Unit and Spare Parts for shipment against presentation to Buyer" of further documents.

With respect to the installation of the Equipment, the Contract specified that Plaintiff was obliged to provide Defendant with a Russian language interpreter, tools, equipment and "all necessary conditions" for installation of the Equipment. The Contract also specified that Defendant was required to supervise the installation of the Equipment in Russia during a supervision period of 5 days for preliminary set-up, and 10 days for commissioning the Equipment into operation. By the end of the supervision period, the Equipment was to be put into operation at its normal working parameters. However, if the Equipment was not put into operation at its normal working parameters, Defendant was required to extend the supervision period at its own expense for a reasonable period of time.

The total price for the Equipment in the Contract was $583,800. This price was the sum of $564,200 for the coiled tubing unit, crane, spare parts, and packing, and $19,600 for supervision of

installation of the Equipment. Plaintiff was required to pay the $564,200 for the coiled tubing unit, crane, spare parts, and packing in three separate payments of $120,000, $120,000, and $324,200. In addition, Plaintiff was required to pay the $19,600 for supervision of installation of the Equipment in two separate payments: $6,800 for supervision of the preliminary set-up of the Equipment, and $12,800 for supervision of commissioning of the Equipment into operation.

On March 18, 2004, at the time that Plaintiff entered into the Contract with Defendant, Plaintiff had already entered into a prior separate contract to sell the Equipment to a company called Rustek for $729,750. In addition, Rustek had already entered into a contract in which it agreed to sell the Equipment to a company called Vend 2000.

In the spring and summer of 2004, Plaintiff made three payments, totaling $564,200, to Defendant under the Contract. The payments were for $120,000, $120,000, and $324,200, to cover the coiled tubing unit, crane, spare parts, and packing.

Defendant then delivered the Equipment to the Port of Houston around August 31, 2004. Robert Parrish, the owner of TVI, rushed his employees to deliver the Equipment by this date in order to avoid the Contract's penalty clause for late delivery. However, the Equipment that Defendant delivered for shipment was defective due to missing parts, poor quality parts, and parts that were not suitable for use in arctic conditions. Neither Plaintiff nor Defendant arranged for an independent inspector's evaluation of the Equipment prior to shipment. However, even if they had done so, the evaluation would not have been able to determine whether any identified defects would have been incurable during the installation process.

After leaving the Port of Houston, the Equipment was first delivered to Moscow, Russia, where it was partially unpacked and assembled. The Equipment was then transported to Novy

Urengoy, Russia, the site where the Equipment was to be installed. When the Equipment arrived in Novy Urengoy, it was still defective.

Defendant sent Charles Burroughs ("Burroughs") to Novy Urengoy, to supervise the installation of the Equipment. Defendant also sent Gary O'Connor ("O'Connor") to Novy Urengoy, to inspect the Equipment once it was in operation. The conditions that Burroughs and O'Connor encountered during the installation process in Novy Urengoy were not ideal. Plaintiff did not provide them with all of the tools and equipment that Burroughs would have liked, and, although Plaintiff provided a Russian language interpreter, she was not as effective as Burroughs would have liked. In addition, the Equipment was in a poorly heated and poorly lighted building. However, none of these conditions made it impossible for Defendant to cure the defects in the Equipment.

During the installation process, Plaintiff discovered that certain parts of the Equipment were missing and not functioning correctly. Plaintiff notified Defendant of these defects orally and in writing. In response, Defendant admitted that the Equipment was defective and assured Plaintiff that it would cure the defects during installation.

Around September of 2005, Defendant ended its supervision of the installation. However, at the time that Defendant ended its supervision attempts, Defendant had not cured the defects in the Equipment. The Equipment was not operational and not suitable for use in arctic conditions. It never became operational because Burroughs and O'Connor lacked the knowledge and skills to cure the Equipment's defects. The Equipment also never became operational after September 2005.

In the fall of 2005, Plaintiff asked Defendant if it could return the equipment for a refund. Plaintiff made this request in conversations between Valentin Zhevlekov, the corporate representative of Plaintiff, and Evgheniya Pashkevich, the director of Defendant's office in Moscow,

Russia. In previous oral and written communications, Pashkevich had held herself out as the director of TVI's Moscow office and TVI's representative in matters concerning the Equipment. In her conversations with Zhevlakov, she rejected Zhevlakov's request to return the Equipment as impossible and unacceptable.

Although Plaintiff had already paid Defendant $564,200 for the coiled tubing unit, crane, spare parts, and packing under the Contract, Plaintiff never paid Defendant the remaining balance of $19,600 for supervision of installation of the Equipment. In addition, although Plaintiff asked Rustek to pay for the Equipment, Plaintiff was never paid by Rustek, and Rustek was never paid by Vend 2000.

On May 19, 2011, at the close of Plaintiff's case, Defendant made an oral motion for judgment as a matter of law. The Court denied Defendant's motion on July 25, 2011.

On May 23, 2011, Plaintiff sought to revive its claim for breach of warranty by filing a motion for reconsideration of the Court's summary judgment rulings. (Instrument No. 99). The Court denied Plaintiff's motion for reconsideration on July 1, 2011. (Instrument No. 106).

## II.   FINDINGS OF FACT

1. Plaintiff entered into Contract No. 11351 ("Contract") with Defendant on March 18, 2004. Pursuant to the Contract, Plaintiff bought from Defendant a new coiled tubing unit, crane and spare parts (collectively, "the Equipment"). The Contract stated that the Equipment was to be prepared for use in arctic conditions. Under the Contract, Defendant was responsible for the quality of the Equipment that was delivered. Defendant was also required to pallet and pack the Equipment for shipment from the Port of Houston to Russia.

2. The Contract also specified that Defendant was required to supervise the installation of the Equipment at the end-user's site in Russia during a supervision period of 5 days for preliminary set-up, and 10 days for commissioning the unit into operation. By the end of the supervision period, the Equipment was to be put into operation at its normal working parameters. However, if the Equipment was not put into operation at its normal working parameters after 10 days, Defendant was required to extend the supervision period at their own expense for a reasonable period of time.

3. Under the Contract, the total price for the Equipment was $583,800, the sum of $564,200 for the coiled tubing unit, crane, spare parts, and packing, and $19,600 for supervision of installation of the Equipment.

4. The $564,200 for the coiled tubing unit, crane, spare parts, and packing was to be paid in three separate payments of $120,000, $120,000, and $324,200. Plaintiff made these payments, totaling $564,200, to Defendant.

5. The $19,600 for supervision of installation was to be paid in two separate payments of $6,800 for supervision of the preliminary set-up of the Equipment, and $12,800 for supervision of commissioning of the Equipment into operation. Plaintiff did not make any of these payments.

6. At the time that Plaintiff entered into the Contract with Defendant, Plaintiff had already entered into a prior, separate contract in which Plaintiff agreed to sell the Equipment to a company called Rustek for the price of $729,750. The Contract did not prohibit Plaintiff from making this prior, separate contract with Rustek. In addition, Rustek had also already entered into a contract in which Rustek agreed to sell the Equipment to a

company called Vend 2000. However, although Plaintiff asked Rustek to pay it for the Equipment, Plaintiff was never paid by Rustek, and Rustek was never paid by Vend 2000.

7. Around August 31, 2004, Defendant delivered the Equipment to the Port of Houston to be shipped to Russia. However, the Equipment tendered by Defendant was defective due to missing parts, poor quality parts, and parts that were not suitable for use in arctic conditions.

8. In 2005, Defendant spent several months supervising the installation of the Equipment at the end-user's site in Novy Urengoy, Russia. During the installation period, Plaintiff discovered that the Equipment was defective. Plaintiff informed Defendant orally and in writing that the Equipment was defective.

9. Although the Equipment was defective, it was possible for Defendant to cure the defects and make the Equipment operational during the installation period. Defendant assured Plaintiff that the defects would be cured.

10. Defendant ended its supervision of the installation of the Equipment around September 2005. However, the Equipment never became operational under Defendant's supervision. It never became operational because Defendant's employees lacked the knowledge and skills to cure the Equipment's defects. The Equipment also never became operational after September 2005.

11. In the fall of 2005, Plaintiff asked to return the Equipment for a refund. Plaintiff's request was made orally, through conversations between Valentin Zhevlakov, the corporate representative for Vemex, and Evgheniya Pashkevich, the director of TVI's

office in Moscow, Russia. In previous oral and written communications, Pashkevich had held herself out as the director of TVI's Moscow office and TVI's representative in matters concerning the Equipment. In her conversations with Zhevlakov, she rejected Zhevlakov's request to return the Equipment as impossible and unacceptable.

### III. CONCLUSIONS OF LAW

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Court also has jurisdiction over the parties. Venue is proper pursuant to 28 U.S.C. § 1391.

13. Contracts relating to the sale of goods are governed by Article Two of the Uniform Commercial Code, which has been adopted in Texas as Chapter Two of the Texas Business and Commerce Code. *Emerson Elec. Co. v. American Permanent Ware Co.*, 201 S.W.3d 301 (Tex. App.—Dallas 2006, no pet.); Tex. Bus. & Com. Code Ann. § 2.102.

14. An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. Tex. Bus. & Comm. Code. Ann. § 2.725(a). The cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Tex. Bus. & Comm. Code. Ann. § 2.725(b).

15. The elements of the laches defense are (1) a delay on the part of the plaintiff in asserting a right or claim, (2) that is inexcusable, and (3) that results in undue prejudice to the defendant. *National Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Texas*, 40 F.3d 698, 708 (5th Cir. 1994). Application of the laches defense is within the discretion of the Court. *Id.*

16. A seller breaches a contract if its delivery fails in any respect to conform to the contract. *Toshiba Machine Co., America v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 776 (Tex. App. – Fort Worth 2005).

17. Where goods fail to conform to the contract, the buyer may reject or accept the goods. Tex. Bus. & Comm. Code. Ann. § 2.601. A buyer accepts goods if he agrees to accept them despite their nonconformity, fails to make an effective rejection, or does any act inconsistent with the seller's ownership. Tex. Bus. & Comm. Code. Ann. § 2.606.

18. Where a buyer accepts goods with knowledge of a non-conformity, the buyer may not revoke acceptance unless the acceptance was made on the reasonable assumption that the non-conformity would be seasonably cured. Tex. Bus. & Comm. Code. Ann. §§ 2.607(b), 2.608(a)(1). Where a buyer accepts goods without knowledge of a nonconformity, the buyer make revoke its acceptance if acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. Tex. Bus. & Comm. Code. Ann. § 2.608(a)(2).

19. A buyer effectively rejects non-conforming goods when the buyer notifies the seller that it will not accept the goods. *HCI Chemicals (USA) Inc., v. Henkel KGaA*, 966 F.2d 1018, 1023 (5th Cir. 1992). The buyer's notice of rejection must be clear and unambiguous. *Id.*

20. Rejection of goods must occur within a reasonable time after their delivery. Tex. Bus. & Comm. Code. Ann. § 2.602(a). Likewise, revocation of acceptance must occur a reasonable time after the buyer discovers the grounds for revocation. Tex. Bus. & Comm. Code. Ann. § 2.608(b).

21. A buyer that has justifiably revoked acceptance of the goods involved may recover damages for as much of the price as has been paid by the buyer for the goods. Tex. Bus. & Comm. Code. Ann. § 2.711(a). In addition, a buyer that has justifiably revoked acceptance of the goods may recover damages for the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages, but less expenses saved in consequence of the breach. Tex. Bus. & Comm. Code. Ann. §§ 2.711 (a), 2.713; *see also* Williston on Contracts, § 66:47 (4th ed).

22. Plaintiff's breach of contract claim is not barred by the four year statute of limitations. The cause of action accrued in September 2005, when Defendant ended its attempts to cure the defects in the Equipment while the Equipment was being installed. Plaintiff brought suit on December 31, 2008, less than four years after September 2005.

23. In addition, Plaintiff's breach of contract claim is not barred by laches. Defendant has failed to show a delay that is inexcusable and has resulted in undue prejudice to Defendant.

24. Furthermore, Plaintiff's breach of contract claim is not barred by estoppel. Defendant argues that Plaintiff is estopped from suing Defendant because its claims are against Rustek rather than Defendant. However, Plaintiff has a breach of contract claim against Defendant.

25. Defendant breached the Contract with Plaintiff by tendering defective Equipment and failing to cure the Equipment's defects during installation of the Equipment.

26. Plaintiff accepted the Equipment. However, because it was possible to cure the Equipment's defects, and because Defendant assured Plaintiff that it would cure the Equipment's defects during installation, Plaintiff's acceptance was made on the reasonable assumption that the non-conformity would be seasonably cured.

27. Plaintiff effectively and timely revoked its acceptance of the Equipment. Zhevlakov's request to Pashkevich to return the Equipment for a refund constitutes a clear and unambiguous notice of rejection. Zhevlakov's request was also timely, because it occurred in the fall of 2005, soon after Defendant ended its attempts to supervise installation of the Equipment in September 2005.

28. Defendant's remaining affirmative defenses all fail.

29. The affirmative defense of expiration or exclusion of warranty does not apply to Plaintiff's contract claim.

30. The affirmative defense of modification of contract also fails. Defendant argues that Plaintiff modified the Contract by requiring a rush delivery. However, Plaintiff did not modify the Contract. The delivery date in the Contract was ambiguous, and Defendant did not show that a delivery date of August 31, 2004 would constitute a modification of the Contract. In addition, Plaintiff did not require delivery by a certain date. Defendant failed to show that Plaintiff actually required Defendant to make the delivery by August 31, 2004.

31. Defendant's arguments that Plaintiff materially breached the contract and provided no notice or opportunity to cure also fail. Defendant argues that Plaintiff materially breached the Contract by transferring rights or duties under the Contract to Rustek or

Vend 2000. However, Plaintiff did not transfer rights under the Contract to Rustek or Vend 2000. Instead, Plaintiff sold to Rustek the Equipment that it had purchased in its Contract with Defendant. Plaintiff was not prohibited from selling the Equipment by the Contract. In addition, Defendant's assertion that Plaintiff did not provide notice of breach or opportunity to cure is incorrect. Plaintiff provided Defendant with notice of breach and the opportunity to cure when it informed Defendant of defects during the installation process.

32. Defendant also argues that the actions of third parties made performance impossible under the Contract, due to (i) lost or broken parts; (ii) improper assembly, testing and/or installation; (iii) failing to provide proper personnel for assembly and installation; (iv) failing to provide proper equipment and storage for assembly, testing and installation; (v) mishandling and misuse of the equipment and tools; (vi) theft of tools and parts. However, Defendant has failed to show that any of these actions made performance impossible under the Contract. To the contrary, Defendant assured Plaintiff throughout the installation process that Defendant would be able to fulfill its obligations under the Contract and put the Equipment into operation.

33. Defendant furthermore argues that Plaintiff's damages are limited under the express terms of the Contract. However, the Contract does not expressly limit Plaintiff's damages. The Contract contains a penalty provision for late delivery of the Equipment which limits the damages that can be imposed for late delivery to 6% of the value of the Equipment. This penalty provision does not apply to the instant breach.

34. In addition, Defendant argues that Plaintiff failed to mitigate damages by failing to (i) include Rustek or Vend 2000 in the instant lawsuit; (ii) otherwise seek payment from Rustek or Vend 2000; (iii) hire someone else to install or repair the Equipment; (iv) inspect the Equipment before it was shipped; (v) provide Defendant with the necessary tools, equipment and personnel to supervise installation; (vi) conduct any of the work that Plaintiff promised to conduct, etc. However, Defendant has not shown that Plaintiff failed to exercise reasonable care in minimizing damages. Plaintiff's failure to include Rustek or Vend 2000 in the instant lawsuit has not prevented it from seeking damages from Defendant. Plaintiff also requested payment from Rustek, but did not receive it. In addition, Plaintiff did not have a contract with Vend 2000. Plaintiff also reasonably relied upon Defendant's assurances that it would cure the defects in the Equipment. In addition, a pre-shipment inspection of the Equipment would not have shown that defects in the Equipment were incurable. Furthermore, Defendant's lack of skills and expertise, rather than Plaintiff's failure to provide tools, equipment or personnel to Defendant, caused Defendant's breach of contract. Defendant has also failed to identify any other "conduct" that Plaintiff should have performed in order to mitigate damages.

35. Finally, Plaintiff argues that any damage was due to Plaintiff's contributory negligence or intervening causes. However, Defendant's lack of skills and expertise, rather than any actions or inactions by Plaintiff or other third parties, caused the instant damages. Furthermore, these defenses do not apply to Plaintiff's contract claim.

36. Plaintiff is entitled to recover damages in the amount of $564,200, the amount Plaintiff paid to Defendant under the Contract. Plaintiff is not entitled to additional damages

based on a market price of $729,750 for the Equipment. Rustek contracted to buy the Equipment from Plaintiff for $729,750 prior to the time that Plaintiff contracted to buy the Equipment for $583,800 from Defendant on March 18, 2004. However, Plaintiff has not provided any evidence showing that $729,750 rather than $583,800 or some other price reflected the market price at the time that the buyer learned of the breach in September 2005.

37. A conclusion of law that should be treated as a finding of fact is hereby adopted as that, and a finding of fact that should be treated as a conclusion of law is hereby adopted as that.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 26th day of July, 2011, at Houston, Texas.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE